IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | CRIMINAL ACTION |
| v. | : | |
| DESIDERIO DISLA ESTEVEZ | : | NO. 13-0020 |
| *also known as* Nelson Orellana | : | |

## **MEMORANDUM OPINION**

Presently before the Court is the Government's Motion In Limine To Introduce Evidence of Other Acts Pursuant to Fed. R. Evid. 404(b) (Docket No. 27), the Government's Motion to Admit Tape Recordings (Filed Under Seal) (Docket No. 31), the Defendant's Response in Opposition to both motions (Docket No. 40) and the Defendant's Supplemental Memorandum Opposing Admissibility of Tapes (Docket No. 52). For the reasons that follow, and for the reasons discussed at the hearing held on June 21, 2013, the Court grants both Motions in part and denies both Motions in part. The Court writes primarily for the benefit of the parties, who are familiar with the facts of this case, and thus will discuss only those facts necessary to the determination of these motions.

The Government seeks to admit a series of tape recordings and transcripts of conversations which allegedly took place between Mr. Estevez and various other individuals, and conversations which allegedly took place between a Confidential Informant ("CI") and an individual identified as "El Grande." The Government also seeks to admit evidence of Mr. Estevez's alleged meetings with the CI, as discussed in these conversations. Mr. Estevez objects to the admission of these tape recordings and transcripts principally on three grounds: (1) the Government cannot lay a proper foundation, as it cannot satisfy the *Starks* test, particularly as to the identification of the speakers; (2) portions of the conversations are inadmissible hearsay; and (3) the Government's refusal to identify the CI and call him as a witness violates *Sixth Amendment* confrontation rights.

1

I. <u>Authentication of the Tape Recordings and Transcripts Under *Starks* and Federal Rule of Evidence 901(a)</u>

In *Starks v. United States*, the Third Circuit Court of Appeals held that "the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings.'" 515 F.2d 112, 121 (3d Cir. 1975) (quoting *United States v. Knohl*, 379 F.2d 427, 440 (3d Cir. 1967)). The Court of Appeals in *Starks* articulated the following factors for authenticating tape recordings:

1. The recording device used was capable of accurately recording the conversations;

2. The operator of the recording device was competent;

3. The tape recordings are authentic and correct;

4. There have been no changes in, additions to, or deletions from the tape recordings;

5. The tape recordings have been properly preserved;

6. The speakers on the tape recordings are properly identified;

7. The conversations were lawfully intercepted pursuant to an application made and order issued under 18 U.S.C. § 2518 or through the consent of one of the parties. Copies of the application and order have been provided to the defendant in accordance with 18 U.S.C. § 2518(9); and

8. The transcripts of the tape recordings accurately represent the English language translation of the conversations on the tape recordings and accurately identify the speakers and parties to the tape-recorded conversations.

*Starks*, 515 F.2d at 121 n.11.

Federal Rule of Evidence 901, which was issued after the Third Circuit Court of Appeals decision in *Starks*, further provides that the test for authenticity requires a showing of "evidence sufficient to support a finding that the matter in question is what the proponent claims it is." Fed. R. Evid. 901(a).

a. <u>English Language Transcripts of the Recorded Conversations</u>

All of the conversations that the Government intends to introduce here are in Spanish. Thus, the Government has translated the conversations from Spanish to English, and intends to introduce the English language transcripts as the substantive evidence of the conversations.

When English language recordings are played for the jury, the recording is the evidence and any transcript prepared by a party is given to the jury merely as an aid. *See, e.g.*, *United States v. Salvo*, 34 F.3d 1204, 1220 (3d Cir. 1994). But where, as here, the recordings are in a foreign language, the transcript in English is the substantive evidence upon which the jury must rely. *See* Third Circuit Model Criminal Jury Instructions, No. 4.07 (Dec. 2012). At the *Starks* hearing held on June 21, 2013, the parties stipulated to the accuracy of the translations of the transcribed conversations. Accordingly, the English transcript of the recorded conversations will constitute the evidence of the recorded conversations upon which the jury must rely.

b. <u>Identification of the Alleged Speakers in the Tape Recordings</u>

Mr. Estevez argues that the Government has failed to meet its burden as to identification of the speakers in the recorded conversations. With regard to identification of the speakers in a tape recorded conversations courts within the Third Circuit have held that the Government need only present evidence sufficient to convince a reasonable jury by a preponderance of the evidence that the alleged speaker is the speaker in order to permit a jury to hear the tape recording. *United States v. Tubbs*, No. 89-498, 1990 U.S. Dist. LEXIS 2761, at *7-9 (E.D. Pa. Mar. 14, 1990); *see also United States v. Savage*, No. 07-550-03, 2013 U.S. Dist. LEXIS 14327, at *15-16 (E.D. Pa. Feb. 4, 2013). In *United States v. Tubbs*, the court held that *Starks* refers to a clear and convincing evidence standard only in reference to "authenticity and accuracy" of the recordings and not as to identification of the speakers. *Tubbs*, 1990 U.S. Dist. LEXIS 2761, at *7. Accordingly, courts have read *Starks* and Rule 901 together to require the Government to identify a speaker on a recording by a preponderance of the evidence standard. *Savage*, 2013

3

U.S. Dist. LEXIS 14327, at *15-16. Courts continue to apply the *Starks* factors to determine the authenticity of tape recordings offered for admission by the Government. *See, e.g.*, *Savage*, 2013 U.S. Dist. LEXIS 14327, at *5-6.

At the *Starks* hearing in this matter, Drug Enforcement Administration ("DEA") Special Agent Andrew Thompson testified for the Government regarding the transcripts of the tape recordings. He described the process used for obtaining the conversations, including the consensual recording of a CI to intercept communications allegedly between the CI and Mr. Estevez, and between the CI and others. According to the testimony of Special Agent Thompson, as to all of the recorded conversations in question the CI agreed to wear recording and transmitting equipment, and freely and voluntarily consented to the recording and transmission of the CI's conversations. Special Agent Thompson explained how, after searching the CI and the CI's vehicle for contraband and money, he provided the CI with a body recorder for purposes of recording conversations, and provided the CI with a transmitter for transmitting the recorded conversations to a remote location where Special Agent Thompson listened to the conversations in real time.[1]

      i. Conversations Observed by Special Agent Thompson

Special Agent Thompson testified that he observed and heard most of the recorded conversations live. Specifically, he testified that he personally placed the recording and transmitting equipment on the person of the CI, by which he was able to hear the recorded conversations as they were occurring, live and in close proximity to his location. Special Agent Thompson also testified that he was able to watch the participants during their conversations from a vehicle located on the same block, and that the conversations he heard and observed matched those on the recordings. Furthermore, Special Agent Thompson testified that, by

---

[1] Special Agent Thompson also testified as to his own proficiency in Spanish, which enabled him to understand the recorded conversations, which were all in Spanish.

observing these conversations live, he was able to become familiar with the voices of the individuals allegedly participating in the conversations. Thus, he was able to distinguish the voice of the CI from the other voice(s) heard on the recordings, and was able to identify other participants he had observed, including Mr. Estevez.

ii. Conversations Which Special Agent Thompson Did Not Observe[2]

Special Agent Thompson also testified as to the identification of the speakers heard in conversations that he did not personally observe. With respect to these conversations, he testified that, having met repeatedly with the CI and having heard and observed many conversations in which the CI participated, he was familiar with both the CI's voice, and with the voices of the other speakers he had seen, including that of Mr. Estevez. Accordingly, Special Agent Thompson testified that, as to calls which he did not personally observe, he was nevertheless able to distinguish the CI's voice from other voices heard on these calls, and was able to identify some other speakers, including Mr. Estevez.

The Court finds that Special Agent Thompson is a credible witness. The Court is satisfied that, given the similar context in which the observed and unobserved conversations took place, along with Special Agent Thompson's experience in listening to the voices of the alleged speakers and his lack of equivocation in identifying the voices, the Government has met its burden to identify the speakers in these unobserved conversations.

The Court finds that the Government has produced evidence sufficient to support a reasonable jury finding that the speakers in the recorded conversations are who the Government has alleged them to be for purposes of identifying the voices heard in the conversations. *See Savage*, 2013 U.S. Dist. LEXIS 14327, at *8-9. Additionally, the Government has met its

---

[2] Notwithstanding the Court's ruling that these conversations are admissible even though Special Agent Thompson did not personally observe them, at trial Mr. Estevez may challenge the identity of the speakers alleged to have participated in these conversations, along with the Government's interpretation of the nature and context of the conversations.

burden as to the other factors articulated in *Starks* for authenticating the tape recordings. *See Starks*, 515 F.2d at 121 n.11.

II. <u>Admissibility of Evidence of Conversations In Which Mr. Estevez is Not Alleged to be a Speaker</u>

The Government also seeks to admit recordings of conversations recorded on or about November 29, 2011, in which Mr. Estevez is <u>not</u> a speaker, but which instead allegedly involve only the CI and El Grande. The Government contends that these calls led to the alleged sale of heroin by Mr. Estevez on or about November 29, 2011, as charged in Count Two of the Indictment. According to the Government, during these calls, El Grande told the CI that he was going to have his partner, "Flaco," set up the delivery of 30 grams of heroin. The Government argues that these calls are relevant and admissible because they place into context the meeting that allegedly took place between the CI and Mr. Estevez later that same day, during which Mr. Estevez allegedly sold heroin to the CI.

Mr. Estevez challenges the admission of these conversations on the grounds of hearsay and the *Sixth Amendment* Confrontation Clause. As to hearsay, Mr. Estevez argues that statements made by the individuals in these calls are out-of-court statements being offered for the truth of the matter asserted. Mr. Estevez also contends that his *Sixth Amendment* right to confront the witnesses against him would be violated by the introduction of conversations between the CI and El Grande, neither of whom the Government intends to call as a witness at trial.

The Government responds that these calls are not being offered for the truth of the matter asserted (that is, the content of the conversations *per se*), but are instead offered to place into context the alleged meeting between the CI and Mr. Estevez by showing that El Grande, in a conversation with only the CI, set up that meeting with El Grande's partner, "Flaco," an individual who the Government alleges to be Mr. Estevez. The Government further argues that

these conversations fall within the co-conspirator exception to the rule against hearsay, which requires that the court find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. *United States v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998); *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002).

However, the Court need not reach the issues of hearsay or of Mr. Estevez's *Sixth Amendment* Confrontation rights in order to find these conversations inadmissible. The Government refuses to call the CI and El Grande as witnesses, and thus none of the alleged speakers in these conversations will testify or be cross-examined at trial. Without the testimony of either alleged speaker as to the identity of "Flaco," the "partner" discussed in these calls, this evidence is simply too tenuous and remote to support a nexus between the potential meeting discussed by the CI and El Grande and any later alleged meeting between the CI and Mr. Estevez. Accordingly, any probative value that these conversations might have in providing context for the alleged sale of heroin by Mr. Estevez to the CI on or about November 29, 2011 is substantially outweighed by the danger of unfair prejudice to Mr. Estevez.

Federal Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, the tape recordings of conversations that took place on or about November 29, 2011 between the CI and El Grande only are not admissible at trial, barring developments at trial that would materially alter the predicates upon which this ruling is based.

III. <u>Admissibility of Evidence of Conversations In Which An Unidentified Male is Alleged to Be a Speaker</u>

The Government also seeks to admit a tape recording of a conversation allegedly involving Mr. Estevez and an identified male on February 27, 2012 (Call No. 554). Mr. Estevez contends that this call is admissible because the conversation lacks relevance to the charges or to the transaction allegedly being discussed between the CI and Mr. Estevez on other February 27, 2012 tapes which the Government seeks to introduce under Rule 404(b).[3] Mr. Estevez also objects to the admissibility of the unidentified male's statements under the co-conspirator exception to the rule against hearsay, codified at Rule 801(d)(2)(E).

The Court concludes the recording of the February 27, 2012 conversation between Mr. Estevez and an unidentified male is inadmissible. Any probative value that this conversation may offer with respect to Mr. Estevez's alleged drug trafficking activity is substantially outweighed by the risk of unfair prejudice to Mr. Estevez. Therefore, in the absence of a "door" for this evidence being opened by the defense, this evidence will not be admitted.

IV. <u>Admissibility of Evidence of Conversations and Meetings In Which Mr. Estevez and the Confidential Informant are Alleged to be Speakers and Participants</u>

The Government seeks to admit tape recordings of conversations and meetings in February 2012 allegedly involving only Mr. Estevez and the CI. Mr. Estevez challenges the admissibility of these conversations and meetings principally on the grounds of improper character evidence, hearsay, and his *Sixth Amendment* Confrontation rights. For the following reasons, the evidence of the conversations and meetings in which Mr. Estevez is alleged to have participated is admissible.

   a. <u>Character Evidence</u>

Mr. Estevez argues that the recordings of these conversations and meetings constitute improper character evidence under Federal Rule of Evidence 404(b). Specifically, Mr. Estevez

---

[3] This conversation is basically comprised of a voice identified as Mr. Estevez telling the other individual to come to Gualey's, and the unidentified individual saying, "all you think about is drugs, dude" and that he is not near Gualey's.

8

contends that the Government seeks to introduce conversations of alleged drug trafficking separate from the drug trafficking activity charged in the Indictment to show that Mr. Estevez has a character as a drug dealer.

The Government responds that it seeks to offer these conversations not to prove Mr. Estevez's character, but rather to prove Mr. Estevez's intent, lack of mistake, and access to heroin. Pursuant to Federal Rule of Evidence 404(b), the Government may introduce evidence of a "crime, wrong, or other act" of the defendant for purposes of proving the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but not for proving "a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Here, the Government contends that these conversations are relevant to proving Mr. Estevez's alleged intent to distribute heroin and absence of mistake or accident, *i.e.*, that the drugs seized by the police on September 28, 2012 did not belong to someone else. Further, the Government argues that these conversations are relevant to prove Mr. Estevez's access to distribution-size quantities of heroin. *See United States v. Zolicoffer*, 869 F.2d 771, 773 (3d Cir. 1989) (evidence of a defendant's prior drug trafficking activities is admissible in a narcotics case to show that the defendant "had access to drugs" and that "he was willing and hoping to engage" in future "drug transactions"). Moreover, the Government argues that any danger of prejudice associated with this 404(b) evidence may be ameliorated by a proper limiting instruction, which would instruct the jury against using this evidence to show Mr. Estevez's criminal propensity. *See United v. Givan*, 320 F.3d 452, 461-62 (3d Cir. 2003).

The Government has met its burden to show that evidence of these conversations and meetings allegedly involving Mr. Estevez and the CI are admissible under Rule 404(b).[4]

---

[4] Inasmuch as the conversations do not explicitly reference drug transactions, Mr. Estevez may challenge the Government's interpretation of the nature and context of the conversations as evidencing "other" drug transactions.

b. Hearsay

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and is offered in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is not hearsay if it is offered against a party to the litigation and is "the party's own statement." Fed. R. Evid. 801(d)(2)(A).

Mr. Estevez argues that portions of the conversations between Mr. Estevez and the CI are inadmissible hearsay because they constitute out-of-court statements made by the CI, who will not be called as a witness at trial, and are being offered for the truth of the CI's statements.

The Government responds that it seeks to offer the statements of the CI in these conversations not for proving the truth of the matter asserted, but instead for providing context to Mr. Estevez's own alleged statements in the conversation. The Government argues that the CI's portions of the conversation must be admitted to provide context to Mr. Estevez's own statements, and without the CI's side of the conversation, the jury could not reasonably understand the nature and meaning Mr. Estevez's statements.[5]

First, this Court finds that Mr. Estevez's statements are not hearsay because they constitute "the party's own statement" offered by the Government against him. *See* Fed. R. Evid. 801(d)(2)(A). The Court also agrees that the statements of the CI are not being introduced to prove the truth of the matter asserted, but rather are being offered to provide context to Mr. Estevez's own alleged statements. *See United States v. DiMatteo*, No. 07-230, 2008 U.S. Dist. LEXIS 3936, at *23 (E.D. Pa. Jan. 17, 2008) (admitting statements of a cooperating witness in a conversation over a hearsay objection because the statements are "simply context for

---

[5] For example, if an informant asks a defendant, "Do you have the drugs for me?" and the defendant responds, "Yes," the statement of the informant is not in and of itself being offered to show that the defendant has drugs. Rather, the statement of the informant is being offered to provide context to the defendant's statement, "Yes," *i.e.*, "Yes, I have the drugs for you." The defendant's own statement, "Yes," is not hearsay because it is a statement made by the defendant which the Government intends to offer against him. *See* Fed. R. Evid. 801(d)(2)(A).

10

Defendant's statements"). Therefore, the Court finds that no part of these conversations offend the rule against hearsay.

      c. <u>Confrontation Clause of the Sixth Amendment to the United States Constitution</u>

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *U.S. CONST. amend. VI*. The *Confrontation Clause* is violated when hearsay evidence is admitted as substantive evidence against a defendant who has no opportunity to cross-examine the declarant. *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987). However, not all hearsay implicates the core concerns of the Sixth Amendment. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Rather, a defendant's Sixth Amendment rights are violated by the introduction of "testimonial" hearsay into evidence, unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. *Id.* at 53, 68; *United States v. Berrios*, 676 F.3d 118, 126 (3d Cir. 2012) ("the *Confrontation Clause* protects the defendant only against the introduction of testimonial hearsay statements").

In *United States v. Hendricks*, the Third Circuit Court of Appeals for the first time interpreted the meaning of "testimonial evidence" as used in *Crawford* and determined its application to evidence of conversations between the defendant and a confidential informant (who had since died). 395 F.3d 173, 175 (3d Cir. 2005). As the Supreme Court in *Crawford* observed, the *Confrontation Clause* applies to "'witnesses' against the accused—in other words, those who bear testimony." *Hendricks*, 395 F.3d at 178 (quoting *Crawford*, 541 U.S. at 51) (internal quotation omitted). In *Crawford*, the Court further observed that "testimony is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Hendricks*, 395 F.3d at 178 (quoting *Crawford*, 541 U.S. at 51) (internal quotation omitted). The *Hendricks* court reasoned that because *Crawford* read the *Confrontation Clause* as

concerned primarily with testimonial hearsay, *Crawford* provides no *Confrontation Clause* protection to statements offered for a purpose other than to establish their truth. *Id.* at 184.

Applying this interpretation to the statements of a confidential informant in conversations with the defendant, the *Hendricks* court held that the informant's statements did not offend the *Confrontation Clause* because:

> [I]f a Defendant . . . makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the *Confrontation Clause* does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant['s] . . . nontestimonial statements into context.

*Hendricks*, 395 F.3d at 184. Thus, the *Hendricks* court held that the Government should be permitted to introduce the confidential informant's statements to put the conversations "into perspective and make them intelligible to the jury and recognizable as admissions [by the defendant]." *Id.* at 182 (internal citation and quotation omitted).

Mr. Estevez argues that admission of these conversations violates his Sixth Amendment Confrontation rights because the Government has refused to call the CI as a witness, and thus, the CI is unavailable to testify at trial—and unavailable for cross-examination—as to the CI's statements in these conversations. At the June 21 hearing, the Government argued that, pursuant to *Hendricks*, the statements of the CI are admissible because they are not being offered for the truth of the matter asserted, but are being offered only to provide context to Mr. Estevez's own admissions made during the conversations.

The Court finds that the statements of the CI do not offend Mr. Estevez's *Confrontation Clause* rights. As discussed above, *see supra* Part IV. b., the CI's statements are not being offered for the truth of the matter asserted, and thus do not constitute hearsay, let alone "testimonial hearsay." *See* Fed. R. Evid. 801(c). Moreover, the CI's statements are not "testimonial" because the CI is not a "witness against" Mr. Estevez. Rather than testifying against Mr. Estevez, the CI is serving merely as a mechanism by which the Government is able

12

to collect evidence against Mr. Estevez, including Mr. Estevez's own incriminating statements, and surveillance and physical evidence of Mr. Estevez's alleged drug sale activities. As in *Hendricks*, the statements of the CI, who is unavailable to testify at trial, are admissible because they were made as part of a reciprocal and integrated conversation allegedly with Mr. Estevez, and are reasonably required to place into context Mr. Estevez's own statements. *See Hendricks*, 395 F.3d at 184. The substantive evidence against Mr. Estevez is not the CI's statements, but is rather Mr. Estevez's own statements, which are admissible as nontestimonial, non-hearsay statements of a party opponent.

Accordingly, the Court concludes that evidence of conversations and meetings in February 2012 allegedly occurring between Mr. Estevez and the CI are admissible.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE